## WOODMAN et al. *vs.* TUFTS et al.

Where an individual constructs a dam so as to flow back water on the land of another, it is a presumption of law that the act is a damage, and no special damage need be shown in order to sustain a suit.

Where a dam was erected, and land flowed by the grantor of an individual, the grantee will not be liable for damage in continuing the dam, and flowing the land as before, except on notice of damage, and request to remove the nuisance, or withdraw the water.

A notice complaining of damage, and of farther continuance of the injury, is sufficient to justify a suit, unless the cause of grievance be seasonably removed.

THIS was an action on the case, for erecting and continuing a dam across Blackwater river, in Boscawen, and thus overflowing the land of the plaintiffs from 26th January, 1833, to 1st January, 1834, when this action was commenced.

The cause was tried upon the general issue, and verdict taken by consent for the plaintiffs, for $1 damages, subject to the opinion of the court upon the following case.

On the 26th January, 1833, the plaintiffs became the owners of the close described in the declaration as injured by the flowing caused by the dam of the defendants.

In 1802, a dam was erected in the place where the dam of the defendants now is, by Ezra Morrill, whose title passed to Enoch Gould in 1812. In 1825, Gould repaired the dam and put it in the state in which it has ever since remained. On the 18th April, 1828, Enoch Gould conveyed the dam to Samuel Smith. On the 23d April, 1828, Samuel Smith conveyed one undivided fourth part of the dam to James Livingston, the defendant, and to Enoch Livingston. On 16th March, 1831, Samuel Smith conveyed to J. F. Tufts, the defendant, three undivided fourth parts of the dam. On the 10th December, 1832, Enoch Livingston conveyed to the defendant, Tufts, one undivided eighth part of the dam.

It appeared that after the dam was repaired, in 1825, the water had been much higher above the dam than it had been

before, and that the land of the plaintiffs had been injured <span style="float:right">Woodman & al. <br> *vs.* <br> Tufts & al.</span> by the overflowing. It appeared that the land had been very seriously injured before the plaintiffs became the owners; and it was insisted, on the part of the defendants, that the overflowing had occasioned no actual damage after the plaintiffs became the owners; but the court ruled, that if the defendants, without right, maintained a dam so high as to overflow the land of the plaintiffs, the presumption of law was that the act was a damage, and no special damage need be shown in order to maintain this action.

In March, 1833, Woodman, the plaintiff, and Tufts, the defendant, met, and a witness who was present testified that Woodman complained to Tufts that his land was overflowed, and said that he meant to have the water off. In October, 1833, the plaintiffs having employed Mr. Whitman, an attorney, to bring a suit, Mr. Whitman wrote to the defendants a letter, a copy of which is as follows:

Boscawen, Oct. 11, 1833.

Messrs. Tufts & Livingston: Gentlemen—Samuel Woodman and John D. Stackpole have applied to me to commence an action against you for flowing their lands, and directed me to commence said action immediately, unless you call and pay the damages. You will please, therefore, to call at my office, on Corser Hill, in the course of the next week, and settle the business, or I shall be obliged to put the same in suit. Your attention to the above without delay will oblige your friend and serv't, Zach. G. Whitman.

About ten days after the date of the letter, James Livingston told Mr. Whitman that he had received the letter, and should do nothing about the matter.

It was objected, on the part of the defendants, that this evidence was insufficient to show these defendants to be parties to the wrong, if any had been done to the plaintiffs, and that, as the dam was erected by others, they could not be held liable until, upon request, they had refused to remove it, and that the above request was insufficient.

It was ordered that the case be referred to the determination of the superior court; and if the court should be of opinion that this evidence is not sufficient to make the defendants parties to the wrong, the verdict is to be set aside, and judgment rendered for the defendants.

*Harris*, and *Bartlett*, for the defendants, contended that the dam having been erected by the defendants' grantor, he remained liable for any injury occasioned by it to the plaintiffs, notwithstanding his conveyance of the property; and to this point cited 3 *N. H. R.* 88, *Plumer* vs. *Harper;* also contended that the defendants could only be liable on explicit request to remove the nuisance, and that there was no sufficient evidence of such request; that the letter of the plaintiffs' attorney was a mere demand of payment of damages, which, for aught that appears, may have been liquidated betwixt the parties. It contained no request to remove the dam, or withdraw the water.

*Whitman*, and *Nesmith*, for the plaintiffs, as to the maintenance of the action, cited 2 *Salk.* 460; 12 *Mod.* 639, *Rosewell* vs. *Prior;* 2 *Wheat. Sel.* 856; 12 *Pet. Abr.* 798.

On the question of damage, 4 *Esp. Ca.* 69, *Cotterel* vs. *Griffiths;* 8 *East.* 4, *Allen* vs. *Ormond;* 3 *Stark. Ev.* 993; 15 *Pick.* 554, *Monson and Brimfield Man. Co.* vs. *Fuller; Angel on Water Courses,* 50.

They also contended that the evidence of the witness in the case, connected with the letter of the plaintiffs' attorney, shew a sufficient request to remove the nuisance.

UPHAM, J. There is no controversy in this case with regard to the right of these plaintiffs to recover, provided suitable *notice* was given, prior to the commencement of the suit, of the damage sustained by them from the flowing of their land by the defendants, and that *request* was made that the water should be withdrawn.

The flowing of the plaintiffs' land is conceded; and the charge of the court, "that, such being the case, it is a presumption of law that the act is a damage," is not controverted. A dam had been erected for more than thirty years at the place where it is now kept up. From its first erection it had caused the water to flow the land now owned by the plaintiffs, to some extent. Subsequently, in 1825, the dam was repaired in such manner as to raise the water much higher than it had been prior to that time ; but the defendants then had no interest in the dam. Their title was acquired some years afterwards, and, for aught that appears, without any knowledge but the dam was rightfully sustained in the state in which it was when acquired by their purchase. Both the plaintiffs and the defendants in this case are, therefore, grantees since the erection of the nuisance.

It may be considered as settled, that when *he who erects a nuisance* conveys the land, he does not transfer the liability for the erection to the grantee, for the grantee is not liable until, *upon request*, he refuses to *remove* the nuisance, for the reason that he cannot know, until such request, but the dam was rightfully erected. There can be no injury in holding to this doctrine, as the original wrong-doer continues liable, notwithstanding the alienation. So holden in *Plumer* vs. *Harper*, 3 *N. H. R.* 88.

A similar reason for a *request* to abate a nuisance arises where the property *affected by the nuisance* has been aliened. If the grantor acquiesced in the act affecting the property, or made no complaint, the natural inference would seem to be, that the grantee willingly took the property as he found it ; and it would be considered as an assent on his part, until request should be made that the nuisance be abated. In *Penruddock's case*, 5 *Coke's Rep.* 100, it is said, " if the house affected by the nuisance be aliened, the alienee, *after request made to remove or abate the unisance,* may maintain an action for the nuisance."

Both parties in this case being grantees since the erection

of the nuisance, there is here a double reason for *a request* that it be abated.

And the question arises, what that request must be. It undoubtedly must be so distinctly and definitely stated, as to convey clearly the ground of the complaint, with a notice that the plaintiff will not longer submit to the continuance of the cause of the injury. It would seem to be an easy matter to make a complaint for a nuisance intelligible to the person continuing it; and a *remonstrance* against such continuance, on such complaint being made, or a request that the nuisance be abated, would be a sufficient ground for the commencement of a suit. No particular form of words is required. The person continuing a nuisance should be so far apprized of the injury done, and of the claim made for redress, as not to be taken by surprise, and subjected to unnecessary costs by the commencement of a suit against him. Whenever this is done, and the occasion of the injury is not removed, a cause of action arises. Were such measures taken by the plaintiffs in this case as to apprize the defendants of their grounds of complaint, accompanied with the requirement that the cause of complaint should be removed? We think there was. The case finds that in March, 1833, Woodman, the plaintiff, and Tufts, the defendant, met, and a witness who was present testified that Woodman complained to Tufts that his land was overflowed, and that he meant to have the water off. Afterwards, in October, 1833, the plaintiff's attorney wrote to the defendants that he had been applied to, to commence an action against them for their flowing the plaintiffs' land, and that he should commence a suit immediately, unless they called and paid the damage. He therefore requested them, without delay, to call and settle the business.

It is objected, that it does not appear from the complaint made where the land was situated; and, also, that from aught which appears by the letter, the plaintiffs made only a claim for liquidated damages; that it contained no

remonstrance against a continuing nuisance, or request that it might be abated.

No complaint or suggestion was made by the defendants, at the time of the conversation testified to, as to any uncertainty as to the location of the land flowed; and it is apparent from the conversation that there could be little probability of any misunderstanding on the subject. As no suggestion was then made as to any uncertainty in this respect, we think it too late to make it now. The letter is open to the exception taken, but it is not the necessary construction of it; and there having been a prior complaint made by the plaintiffs, accompanied by the remark that they would have the water off, the letter may be considered as referring to the complaint before made, and intended to sustain it in a similar manner. We think there was sufficient evidence of a complaint of damage, with a requirement that the cause of it should be removed, to justify the commencement of a suit, and that the defendants cannot reasonably complain of any surprise for want either of seasonable or proper notice. There therefore must be

*Judgment on the verdict for the plaintiffs.*