## Snow & *a.* *v.* Cowles & *a.*

A purchaser of mills is not liable for continuing a nuisance which was commenced by his grantor, until after notice. A purchaser of a mill-dam, so constructed as to divert the water when the gates are closed, will be liable, without notice, for diverting the water by keeping the gates closed, if his grantor has kept the gates open.

CASE for diverting the water of Sugar River, in Claremont, from the plaintiffs' cabinet shop and machinery.

Upon the general issue, it appeared, that the plaintiffs, on the 2d of May, 1848, became owners of a lot upon the river, on which a cabinet shop, with a water-wheel and machinery was erected in 1836, and has been since used. The shop is on the north

channel or branch of the river, where it is divided by a small island called Rock Island. Above the shop, at the head of this island, were the defendants' mills, called the Dexter Mills. Some of these had been standing fifty years, and none less than thirty.

These mills were supplied with water by means of a dam, originally built above the mills, but subsequently, in 1836, moved down near them. They had been generally kept in operation from the time of their erection to the present, and the water passed freely from them down the north channel. The water-power on the south side of the island was never used till 1845.

In 1837, the then owners of the shop, being in want of more water than came down the north channel, called upon the occupants of said Dexter Mills to raise their gates and let down the water, and they did so.

About 1844, Albert Cowles, one of the defendants, and one Brown, purchased the Dexter Mills and privilege, and soon after repaired their flume, so that so much water did not run through it as before ; but it did not appear, that they made it tighter than it had been when it was in good repair.

In April, 1846, the defendants became the owners of these mills and the dam and privilege, and occupied them as they pleased, but generally kept the gates up and the mills going. In November, 1848, their logs being all sawed out, the gates of their saw-mill were closed for some part of the time between said November and January following, the grist-mill in the mean time continuing to run about as usual.

It appeared that in October, 1848, the machinery in the plaintiffs' shop was repaired and put in running condition ; but it did not appear, that they were using their works in December 1848, when the said gates of the defendants were closed, or that they had ever suffered any special damage by the interruption of their works for the want of water, after the defendants became owners of the Dexter Mills. Neither did it appear, that Cowles and Brown, or the defendants, had ever been requested, or required, or notified by any one, to hoist their gates, or lower their dam, or that any claim for the water had ever been made upon either of them.

There was a dam or wall, extending from the flume of the defendants to the head of Rock Island, which diverted all the water from the north channel, and consequently from the plaintiffs' shop, except what passed through the works and mills of the defendants, which dam or wall was erected by defendants' grantors.

On this evidence the defendants moved, that the plaintiffs be nonsuited, which motion was granted by the Court, and the plaintiffs subsequently moved that the nonsuit be set aside, and for a new trial.

*Cushing*, for the plaintiffs. The injury, from which the plaintiffs in this action seek redress, is that the defendants, by shutting their gates and tightening their flume, have prevented the water from flowing through the defendants' works, as it formerly did and of right ought to have done. Whether the defendants have a right to maintain their dam, so that the water, which flows away from their works without passing through them, must pass down the South channel, is a matter not necessarily to be litigated in this suit.

The plaintiffs' case is, that the defendants have prevented the water from flowing through their mill, as it ought to have done, and as, until the time of the injuries complained of, it had done.

The plaintiffs' points are, 1st, that no notice need be alleged or proved, except where the injury complained of is a continuation merely of the nuisance, as the defendant bought it. If the nuisance be enlarged, or a new one created, no notice before suit need be alleged or proved. *Woodman* v. *Tufts,* 9 N. H. Rep. 88. 2d. The plaintiffs, having shown that their works were ready for use, need not show any especial damage by the diversion of the water from them. *Ib.*

*Perley* (with whom was *Prentiss,*) argued, at a prior term, for the defendants.

1. The defendants are purchasers of the dam and mills, and are not liable for maintaining and using them, without notice from the plaintiffs that they are doing a wrong. The purchaser has a right to suppose that the dam and mills, which he has

bought, were rightfully erected and maintained; and that they may be lawfully maintained and used, as works of that kind ordinarily are. He is not bound to know or suspect that, before his purchase, one party committed a wrong, and the other submitted to it. This is the reason assigned for the rule of law, which requires a notice or request to remove a nuisance before an action can be maintained by or against a purchaser. And this reason of the rule will be a safe guide in applying ti to the present case. *Woodman* v. *Tufts*, 9 N. H. Rep. 88; *Winsmore* v. *Greenbank*, Willes, 583.

2. The defendants are not liable for repairing the dam, so as to make it as tight as it had been before it went out of repair. All dams are liable to decay and accidental damage, and are repaired from time to time, as they need it. How could the defendants be supposed to understand that these plaintiffs would set up a pretence that this dam could not be repaired like all others? They had a right to suppose that this dam was lawfully erected, — such is the language of the decided cases, — and of course that it was lawfully maintained, when in its best state of repair. *Woodman* v. *Tufts*, 9 N. H. Rep. 91.

3. The defendants are not liable for closing the gates of their saw-mill a part of the time between November and January, when they had no logs to saw. The defendants purchased several different mills, and a dam to create a power for them all. The case shows, that the mills were generally worked before and after the purchase. There was no evidence that the water was ever wasted at any gate of any mill before the purchase, except that on one occasion, when the plaintiffs' grantors needed water, at their request it was let down. The extraordinary claim is here advanced, that the defendants were at all times bound to let the water run at all their gates, whether they could use it or not; whether the plaintiffs wanted it or not; or whether or not the defendants had the water to spare from their other works; and that the defendants were bound to know that the mills they had bought, were subject to this unusual, unreasonable, and useless servitude. If any such right exists in the plaintiffs, most certainly the defendants ought not to be charged with a violation of it, until after a very distinct notice.

4. Simon Cowles, one of the defendants, bought in 1846, after the repairs had been made, and of course is not liable for the consequences of these repairs without notice.

5. The plaintiffs' title accrued in May, 1848. The repairs were made in 1846: and they must give notice of a nuisance to their property, existing at the time of their purchase, before they can bring a suit. On this ground no action can be maintained for damage in consequence of the repairs in 1846. *Woodman v. Tufts*, 9 N. H. Rep. 91.

6. Here was no diversion of the water: no evidence that the dam turned the water round into the other channel. The dam stopped the water for the use of the defendants' mills, and for this no action can be maintained by the owner below, without showing actual and unnecessary damage. 3 Kent Com. 440, 441; *Platt* v. *Johnson*, 15 Johns. Rep. 213; *Merritt* v. *Brinkerhoff*, 17 Johns. Rep. 321; *Tyler* v. *Wilkinson*, 4 Mason, 40; *Williams* v. *Morland*, 2 Barn. & Cress. 910. There was no evidence that the water ran over the dam into the other channel during the time complained of.

7. The declaration is for diverting the water, and nothing can be recovered for stopping or detaining it. *Marston* v. *Griffiths*, 6 Price, 1. We rely, however, whatever may be the rights of the plaintiffs, on the want of notice.

BELL, J. The case of *Woodman* v. *Tufts*, 9 N. H. Rep. 91, is decisive as to Simon Cowles, who became a part-owner of the Dexter Mills in 1846, after the repairs, which form the chief ground of complaint, had been made in 1844. No change of the dam or flume appears to have been made after he became the owner, which would subject him to any action. So far as the dam and flume are concerned, he would be liable, if at all, only for continuing the nuisance, which had been erected by others two years before. He was not notified to remove the dam, or that it was injurious to the owners below, or that they wished it to be removed. He was of course not liable for any injury the plaintiffs may have sustained from the continuance of the dam and flume in the same condition in which they were when he acquired the title.

Albert Cowles was, however, liable for any damages he might cause to the plaintiffs, by obstructing the natural flow of the water to the mills below, beyond what must necessarily arise from a reasonable and proper use of the water, while it was passing his premises, unless he had acquired a right to obstruct or divert the water, by a grant, actual or presumed, or by twenty years adverse possession.

The case does not show how far the obstruction complained of was occasioned by a reasonable use of the water, nor how far the defendant had acquired rights to interfere with the natural flow of the stream, by grant or otherwise. No such rights can be presumed without proof, nor inferred by the Court, though there is evidence which the jury might consider as to these points.

The injury resulting to the plaintiffs, from the continuance of the dam and flume, being caused by the act of this defendant, he cannot avail himself of the want of notice to his co-defendant, and the nonsuit as to him was wrong, and should be set aside on this point.

But we understand the case to present another ground of claim against both the defendants, which is entirely free from this objection of the want of notice, not resting on the form, or construction, or state of repair of the dam, but upon an alleged wrongful use made of it, by shutting some of the gates, through which only the water could reach the plaintiffs' mills, and thereby obstructing the natural flow of the water for some weeks in the fall of 1848, at all hours, to the injury of the plaintiff, while previously, it would seem, the gates had been closed, at most, only during the hours when labor is usually suspended. For this injury, it is contended the defendants are not responsible without notice, because it was occasioned merely by the continuance of a dam erected by others before their purchase, on the ground that a purchaser has a right to suppose that the dam and mills which he has bought were rightfully erected and maintained, and that they may be lawfully maintained and used, as works of that kind usually are. This view, we think, cannot be maintained. The general principle supported by the case of *Woodman* v. *Tufts*, is, that a man who purchases land, on which

there is a nuisance or cause of nuisance to an adjoining land-owner, is not liable for continuing the nuisance, as it was when he purchased. That case was one of a man continuing a dam standing on land purchased by him, and thereby flowing a meadow above, and *it was* held that he was not liable for continuing the dam and *flowing as before,* until notice had been given him. We speak loosely of a dam, which occasions an injury to the land of others, as a nuisance, though when erected on a man's own land, it may rather be deemed the cause of a nuisance, since a dam may be so constructed, (and perhaps they generally are so,) that it is capable of producing injury to the owner of the land above or below, and yet be so managed that it is not a nuisance, and occasions no damage. It is not even loosely to be spoken of as a nuisance, until it produces some injury or damage to others, but if it is so used as wrongfully to throw the water upon the lands or mills of another, it may be called a nuisance. Generally, a man may erect such a dam or structure of any kind upon his own land, as he thinks proper, if he does not injure the property of his neighbor or infringe upon his rights. It may be such as, if used in the ordinary way in which property of a similar kind is generally used, it must become a nuisance, and yet if not so used, it furnishes no just ground of complaint. The right of the purchaser to use the dam he has purchased, *to flow the land of others without liability till notice,* is not to use it as such property is ordinarily used, but merely to flow the land, as it was flowed before ; to continue the nuisance, that is the flowing or diversion, as it was at the time of his purchase. In the present case, the right of the defendants was to continue to use their dam to obstruct or divert the water, without liability until notice, in the same manner as the persons of whom they purchased were using it, at the time they purchased. The evidence here tends to prove, that they obstructed and diverted the water in a manner entirely different from their grantor's use of the property ; closing, for weeks, gates which he kept open in the usual working hours. This is an original wrong of both these defendants, for which they are responsible without notice, and the obstruction and diversion of the water in that

way being admitted by the case, it is a presumption of law that the act is a damage. See *Woodman* v. *Tufts,* before cited.

For this injury the plaintiffs were entitled to proceed. The nonsuit was therefore wrong, and must be set aside.