# SULLIVAN,

---

## SNOW & a. v. COWLES & a.

A notice, to lay the foundation of an action for continuing a nuisance by the grantee of the person who erected it, is sufficient, if it give the party to understand the ground of complaint, and that the plaintiff desires its removal.

CASE, for diverting the water from the plaintiff's shop and water power, on the north channel of the Sugar river, in Claremont, by means of a dam across said channel above, which turned the water into another channel on the other side of an island there, called Rock island, and thus prevented it from flowing to the plaintiff's mill.

In 1844, the defendant, Albert Cowles, and one Edward Brown, owned the mills above, and then repaired and tightened their dam, so as to produce the diversion now complained of. In 1845, after these repairs were completed, the defendant, Leman Cowles, purchased of Brown his interest in the mills.

In September, 1848, Leman Cowles, with others, went to the dam of the plaintiffs, and there began a conversation with the plaintiff, Snow, in regard to his, Cowles', claims to the water. Henry Russell testified, that he understood Cowles to say, that he came down to set forth his claims, and the witness said, he made large claims; and that Snow did the same, and that Snow claimed seven-eighths of the water of Sugar river, and said that he, Cowles, had begun it, and he should have law enough before he got through it.

The plaintiff also offered in evidence a paper, of which the following is a copy :—

"Sullivan, ss.    C. C. P. February term, 1851.

Alpheus F. Snow, Frederick T. Kidder, and Samuel P. Fiske *v.* Lemuel Cowles and Albert Cowles.

Leman Cowles *v.* Frederick T. Kidder and Alpheus F. Snow.

It is admitted, that when the defendants in the first above entitled action, in September, 1848, made claims upon the plaintiffs, as testified to heretofore on the trial of the action *Leman Cowles* and *Albert Cowles* v. said *Kidder* and *Snow*, the plaintiffs in the first above entitled action claimed to have seven-eighths of the water of Sugar river run down the north channel of said river at Rock island, for the use of the plaintiffs' cabinet shop.   It is also admitted, that the parchment plan, used heretofore by the court in said action, said *Leman* and *Albert* v. said *Kidder* and *Snow*, is the original proprietary plan of the town of Claremont.

J. J. PRENTISS, Attorney for Cowles."

The court instructed the jury, that in order to enable the plaintiffs to maintain their action against Leman Cowles for continuing to divert the water, as it was diverted at the time he purchased, they must show a notice to him that he was interfering with their rights, and a request to remove the obstruction, and that it was for them to determine upon the foregoing testimony, whether the defendant, Leman Cowles, had notice, that he was wrongfully diverting the water, and whether he was requested to remove the obstruction causing the diversion.

The defendants contended, that the above did not amount to a notice or request to said Cowles, but was in law incompetent to charge him with notice ; and excepted to the foregoing instruction.

The jury found a verdict for the plaintiffs, which the de-

fendants moved to set aside, and for a new trial, by reason of said exception.

*Wheeler*, for the defendants.

Leman Cowles being the grantee of one by whom the diversion of the water was commenced, could not be charged in this action, without notice of the nuisance, and a request to remove it. The instruction of the court in this particular, was therefore correct, and in conformity with the doctrine laid down in *Woodman* v. *Tufts*, 9 N. H. Rep. 88.

The only question then is, does the testimony submitted to the jury show that Leman Cowles was notified of the existence of the nuisance; and that he was requested to remove the same. In other words, did the statement of Snow convey to him, with reasonable certainty, the information that by keeping the dam in the condition in which it had been since 1845, he was doing a wrong to the plaintiffs? and did that statement contain a request that the obstruction caused by tightening the dam, should be removed? The court will give to the language used its proper legal signification.

The admission signed by the defendants' attorney goes no further than the testimony of Russell; and it will not therefore be necessary to consider it separately.

The testimony relied upon by the plaintiffs in this case, is widely different from that in *Woodman* v. *Tufts*. There the plaintiff complained to the defendant that his land was overflowed; and he further stated that he meant to have the water off. His attorney demanded damages for flowing the lands, and gave notice of a suit, in case the business was not settled.

Nothing of this character appears in the present case. The interview in September, 1848, was sought by Cowles, and not by the plaintiffs. The object was to enable him to set forth his claims to the water. In reply to his statement, Snow put forth a claim to seven-eighths of the water of the

river. There was nothing in Snow's statement which indicated whether the plaintiffs then considered themselves to be in the enjoyment of more or less than the amount of water claimed; there was no complaint that the water was kept back, or diverted; there was no allusion to the defendant's dam; and no request that the mode of using the water by the defendants should be changed. The statement that Cowles began it, and should have law enough before he got through it, shows that the subject of the conversation was, the injuries to the rights of the defendants. On the part of the plaintiffs, there was neither the statement of an injury, nor a claim for redress.

*A. F. Snow* and *E. L. Cushing*, for the plaintiffs.

WOODS, J. The only question in this case is whether the testimony of the witness, Henry Russell, and the paper containing the admission of the defendant and signed by his counsel in the case, were properly left to the jury as evidence of a sufficient notice from the plaintiff to the defendant, Leman Cowles, to entitle him to bring the action.

In *Woodman & a.* v. *Tufts & a.*, 9 N. H. Rep. 88, the court say, " It would seem to be an easy matter to make a complaint for a nuisance intelligible to the person continuing it. No particular form of words is required. The person continuing a nuisance should be so far apprised of the injury done, and of the claim made for redress as not to be taken by surprise and subjected to unnecessary costs by the commencement of a suit against him."

In *Carleton* v. *Redington*, 1 Foster's Rep. 291, it was held that all that is required in such notice or request is, that it be " so distinctly and definitely made, as that the person to whom it is addressed shall fully understand the ground of complaint, and that the party is unwilling that the nuisance should be continued, and that he desires its removal." "And that it is immaterial whether such notice or information be

brought home to the knowledge of the party by acts or by words."

The present action is for diverting the water from the plaintiff's shop by means of a dam, across the north channel of Sugar river, which turned it into another channel upon the other side of an island.    In an interview, in which the respective claims of the parties were the subject of earnest discussion, the plaintiff, Snow, stated his claim to be to seven-eighths of the water; and that Cowles, having begun it should have law enough before he got through.    Now we think the jury were fully justified in finding, upon that evidence, that the defendant, Leman Cowles, was apprised by the conversation, that the plaintiffs claimed that the alleged obstruction of the water was against their rights, and that they insisted upon its removal.    The reason for which the law entitles the party continuing a nuisance existing at the time of his purchase, to a notice of the character of the erection, seems to be fully answered by such a notice as this case finds.

*Judgment on the verdict.*