## GERRISH *v.* NEW MARKET MAN. CO.

If an owner of a mill cause the water upon a stream to be accumulated during the wet season, and draw it off in the summer, so as to cause a greater flow than usual, by means of which the banks of the proprietor below are washed away, his land drowned and his grass depreciated, an action will lie in his behalf for the damage.

It is no impediment to the maintenance of such action, that the damage done is small.

Any benefit that such flowing may cause to another part of such proprietor's land cannot be considered by the jury in recoupment of the damage so caused.

In considering exceptions to instructions given by the court to the jury at the trial, such instructions are to be taken in connection with the evidence, and their general terms limited accordingly.

CASE, for obstructing and diverting the water in a mill stream in Nottingham, and flowing and injuring the plaintiff's land below. The writ was dated July 26, 1848. The general issue was pleaded.

It appeared that the defendants, in 1840, erected a dam across said stream, for the purpose of creating a reservoir, the water from which they used to carry a saw and shingle mill, and also, as occasion might require, to supply their manufacturing establishments at New Market, several miles below said dam. The dam was erected on an old mill site, of which the defendants had become the owners. The plaintiff's land was situated on the river between said dam and said manufacturing establishments.

Prior to the erection of said dam the spring freshets had usually overflowed the lands below, and during the summer months very little water run in said stream except in case of heavy rain.

The defendants, by their dam, saved the water caused by the freshets and the melting of the snow in the spring, and used it during the dry months as they needed for manufacturing purposes—the evidence tending to show that they created an extensive reservoir, and generally kept the water running during the summer months in an unnatural and unusual manner, to the extent of about one mill's water. The plaintiff's evidence tended to show that this unnatural use of the water by the defendants had done him some trifling injury in washing away his soil and river banks. His evidence also tended to show that the defendants had, by the same unnatural use of the water, overflowed his lands in some low places, and that in other places the water had soaked through the banks, by which means the grass had been killed or depreciated. The defendants' evidence tended to show that although in some places the plaintiff's land might be slightly injured by their uses of their water, yet in other places it was benefitted, so that upon the whole the plaintiff had received more benefit than injury by the manner in which they had used the water.

The defendants' counsel requested the court to instruct the jury " that if they should find that the mill stream, in the natural flow thereof, for the six medium months in each year, supplied water sufficient to carry one mill, in three of the other months only part enough, and in the other three months much more than enough to carry one mill, in that case the defendants had a right, in the dry months, to fill the channel of said river on the plaintiff's land to the medium height of one mill's water by additional water from their reservoir which had been saved from the waste water of the three wet months."

Upon this point the court instructed the jury that the de-

fendants had the right to use the water in the manner contended for by them, and as their interests might require, provided that in so doing they did no injury to the plaintiff; but if by such use of the water in the summer or dry months, the use being an unnatural one, any injury was done to the plaintiff, the defendants would be liable. To which instructions the defendants excepted.

The defendants' counsel also requested the court to instruct the jury "that the plaintiff was not entitled to recover unless he proved actual substantial damage done him by the defendants, in the manner alleged in his writ." The court did not so charge the jury but instructed them that if by the unnatural use of the water by the defendants the plaintiff's land was overflowed, or his river banks and soil carried away, or his land and grass injured, they would return a verdict for the plaintiff. Should they find that the land had been simply overflowed, or the river banks but slightly lessened, so that only a trifling injury had been done, their verdict would be for nominal damage only. If a substantial injury had been done, their verdict should be in proportion to the injury sustained; to which the defendants excepted.

The defendants' counsel also requested the court to instruct the jury "that the plaintiff was not entitled to recover, unless upon the whole the defendants had injured his land more than they had benefitted or improved it." But the court declined so to instruct the jury, but did instruct them that there was no such thing as an off-set in actions of this kind, and that if the defendants, by the unnatural use of the water, had injured the plaintiff's lands or killed his grass, the plaintiff was entitled to their verdict for the amount of the damages sustained, even though other portions of the plaintiff's lands were benefitted so that upon the whole the plaintiff would be more benefitted than injured; to which the defendants excepted.

The jury returned a verdict for the plaintiff for the sum of

thirty-three dollars. And the defendants moved to set the same aside and for a new trial, for supposed error in the foregoing decisions of the court.

*Christie*, for the defendants.

I. The owner of mills has a right to fill the channel below, to its usual and ordinary height to conduct the water from his mill. It is not detaining the water unreasonably, and then letting it out in an unreasonable manner, nor is it either of those wrongs. The riparian proprietor has no right to the use of any part of the channel for agriculture. Such channel, and the usual height of water therein, is for the use of those owning mills on the stream. Such owners have a right to use the channel to such extent, although it may to some extent hinder the growth of vegetation that might otherwise, in the dry season, spring up in the channel or on the margin thereof. The instruction to the jury, that if by the defendants' use of the water any injury were done to the plaintiff the defendants' would be liable, was erroneous. *Tyler* v. *Wilkinson*, 4 Mason 401 ; *Palmer* v. *Mulligan*, 3 Caines 307 ; *Thompson* v. *Crocker*, 9 Pick. 59 ; *Merritt* v. *Binkerhoff*, 17 Johns. 306; *Hebrick* v. *Deachley*, 6 Barr 32 ; *Prescott* v. *Williams*, 5 Met. 249 ; *Cooper* v. *Hall*, 5 Ham. 320.

II. The instruction that " the plaintiff was not entitled to recover unless he proved actual substantial damage done by the defendants, in the manner alleged in the writ," should have been given, and the instruction given instead was too broad, and consequently erroneous.

That it was necessary to prove actual substantial damage, appears from the authorities cited to the preceding point.

That the plaintiff could recover only for injuries set forth in the declaration, rests on the familiar principle that the proof must be confined to the allegations in the declaration,

and the recovery of damages to the gravamen alleged and proved.

The gravamen set forth was drowning the plaintiff's land. But evidence was given of injuries done it by depriving it of spring or fall freshets. And the charge authorized a verdict on this ground. *Williams* v. *Marland*, 2 Barn. & Cress. 910.

III. The instruction as to the rule of damages was erroneous. *McKillip* v. *McIllkenney*, 4 Watts (Pa.) Rep. 317; *Addison* v. *Hock*, 2 Gill 22; Angell on Watercourses, (Ed. 1850,) § 433.

*J. S. Wells*, for the plaintiff.

Every person owning land on the banks of rivers has a right to the use of the water in its natural stream, without diminution or alteration, and that it shall flow *ubi currere solebat;* and if any person interrupts or diverts the course of the water to his prejudice, an action will lie, and it is as illegal to detain the water unreasonably as to divert it. Angell ch. 4 and note 1, § 95; 3 Kent's Com. 444; 9 N. H. Rep. 88; 17 Johns. 306.

The cases cited by the defendants were disputes between mills, each having a right to the use of the water, and do not apply here. As to the damages, those cases show that the advantages or benefits may be shown in mitigation, whereas here it is contended that they may be set up as a full answer to the action. The case in 9 N. H. Rep. 88, Angell § 135 and note 1, § 449, and 2 Story 661, are against them. The pleadings, also, preclude them. 2 Greenl. Ev. § 274.

It is not a sound principle that advantages resulting from a wrongful act may be shown in mitigation, even. Advantages result sometimes from building railroads, but it has been held that the jury should not deduct them from the damages.

Woods, J.   In general, each proprietor of land through which a stream flows, has an equal right to the use of the water in its natural course, without diminution or alteration, and neither has a right to use or obstruct the water to the prejudice of the other proprietors, unless he has acquired a title to some exclusive enjoyment, by an actual appropriation and use of the water during the legal period, or by some other mode of gaining a title.

The principle is, however, subject to this qualification, that each proprietor may use and apply the water, while it runs over his land, to domestic, agricultural, and manufacturing purposes, provided he uses it in a reasonable manner, and so as to work no actual, material injury or annoyance to others.   And a proprietor below can maintain no action for any damage he may incidentally suffer from such use or interruption of the water, if it is not detained unreasonably, or let off in unusual quantities, so as to deprive him of the use of it, or to cause some actual injury.

Neither can a proprietor above maintain an action for an obstruction of the water below, unless he has sustained some actual damage.   But if his land is thereby flooded, or the obstruction or annoyance is a material injury to him, he may maintain an action for the damage.   *Braly* v. *Show*, 6 East 214 ; *Mason* v. *Hill*, 3 Barn. & Adol. 304 ; *Wright* v. *Howard*, 1 Sim. & Stu. 190 ; *Johns* v. *Stevens*, 3 Vt. Rep. 308 ; *Crooker* v. *Bragg*, 10 Vt. Rep. 260 ; 2 Cow. & Hill's Notes 379.

In *Davis* v. *Fuller*, 12 Vt. Rep. 190, Mr. Justice *Collamer*, after a careful review of the authorities, says : " The result of the authorities, then, is, that every owner of land over which a stream flows, has the right to the natural flow of the stream ; that he can never be deprived of this right but by grant, actual or presumptive.   Whenever this right is encroached upon by obstructions or reservoirs, above or below, and actual injury ensues to any material amount, an

action accrues, however valuable or convenient the use of such obstructions may be to him who erected them."

These principles of law are well settled, and, indeed, they are not drawn in question, by either party, in this case. Their application will be found, upon examining the cases, to be not very difficult.

By actual, material damage is to be understood simply damage, without epithet, or the qualification of much or little. In *Thompson* v. *Crocker*, 9 Pick. 59, the court had instructed the jury " that if the plaintiff had proved that his mills had sustained any actual, perceptible damage, in consequence of the erection of the defendant's dam, he was entitled to recover." This instruction was holden by the supreme court to have been correct. The chief justice remarked : " 'We do not see how he can be refused his legal compensation because his damage was small ; and we should feel at a loss to fix the amount of injury above which there should be a right of action, and below it none."

In *Woodman* v. *Tufts*, 9 N. H. Rep. 88, it was decided that where an individual erected a dam, so as to flow back water upon the land of another, it is a presumption of law that the act is a damage, and no special damage need be shown in order to sustain an action.

In conformity with this principle was the instruction of the court, " that if the plaintiff's land was overflowed, or his river banks and soil carried away, or his land and grass injured, they would return a verdict for the plaintiff." They were directed to inquire into the extent of the damage, not to test the right of the plaintiff to maintain his action, but for the legitimate purpose of assessing damages. It is impossible to impeach the instructions, on that ground, without disregarding principles that have always been observed, and the only reasonable ones that can easily be conceived to govern such cases.

The court, with equal propriety, instructed the jury that they could not properly compare the damage which the de-

Gerrish *v.* New Market Man. Co.

fendants' acts had caused in one part of the plaintiff's land, with benefits they may have done in other parts, and deduct the latter from the former, in assessing damages. The instructions for which the defendants' counsel moved the court were to the contrary of this, and were, therefore, denied. There is no set off or recoupment of damages, not founded on the undertaking or default of the party sought to be subjected to such adjustment, nor can he who has inflicted a wrong, require the injured party to accept indemnity in any other manner than such as the law provides. No precedent is found for such a claim as is made in the motion adverted to, nor indeed is the point urged in argument.

Instructions given to the jury, on the trial, refer to the evidence, and must be interpreted by such reference, and enlarged or limited accordingly. In the case before us, there was evidence that the plaintiff's banks and soil were carried away, and his grass damaged, not by restraining the flow of the water in the spring and autumn, but by increasing it in the summer months. It is true, the water was so restrained in the spring and autumn, but no evidence points to that as the cause of the damage. The grass was killed or depreciated, by overflowing some low parts of his land, and the soaking of the water through the banks in other places. Such were the very consequences of the obstructing, diverting and flowing set up in the declaration. Such damage was, in short, itself the drowning, said, in the argument, to have been the gravamen of the suit. It seems, therefore, an unfounded objection to the instructions, that they omitted to limit the plaintiff's right to recover to those injuries which are embraced in his declaration, since, there being no evidence of any other damage, the jury could not possibly have found any other, upon the instructions given them.

The instructions appear to have been, in all respects, correct. The cause of action was, that the defendants, by accumulating the water in the autumn and spring, and letting it off in unusual quantities in the summer, caused the land

of the plaintiff to be flowed, and the grass and other herbage, which had been accustomed to grow upon the banks, to be drowned and destroyed, and the banks to be damaged to an extent that enabled the jury to estimate the damage.

Such a use of the channel was not justified by any rights accruing to these defendants, from the mere fact of their owning mills above and below. It was most clearly "letting off the water in unusual quantities," and if the plaintiff's land was thereby flooded at the season when it was accustomed to be dry, and that, too, the only season in which it could be of any use to him, he was entitled to his action, and to an estimate of the extent of the injury, to be made by the jury.

*Judgment on the verdict.*