# THE COLORADO LAW REPORTER.

Vol. III.]              Denver, May, 1883.              [No. 9.

## LEARNED v. TRITCH.

*(In the Supreme Court of Colorado, December Term, 1882—Error to the Arapahoe County Court.)*

1. TRUSTS, EXPRESS AND RESULTING—HOW ESTABLISHED BY PROOF. Express trusts are created by contract. Implied or resulting trusts are such as arise by operation of law upon certain acts of the parties. Hence resulting trusts may be shown by parol—*i. e.*, the necessary facts and circumstances being shown by parol, the resulting trust is an implication which the law attaches to the given state of facts. Express trusts, being a matter of agreement between the parties, must be proved as contracts.

2. SAME—WHEN APPLIED TO LANDS—STATUTE OF FRAUDS. When this class of contracts relate to lands, in order to prevent uncertainty, perjury and injustice likely to ensue from attempts to show secret trusts by parol, the statute of frauds and perjuries intervenes and requires that such trusts shall be manifested and proved by writing under the hand of the party to be charged.

3. SAME—NOTICE TO PURCHASER. The purchaser of real estate is not chargeable with notice beyond what affects his title. And when the record shows the legal title to be in his vendor, and gives no intimation of a trust—the vendor having the clear right to sell and convey—a *bona fide* purchaser for value takes the legal title, which cannot, upon parol testimony, be charged with secret trusts.

4. SAME—POWER TO SELL. A trustee, being authorized in the execution of a trust, either to apportion the property among the *cestuis que trust*, or to sell it and pay them out of the proceeds, holding the absolute title to the property, can convey a good title discharged of the trust, to any *bona fide* purchaser—the latter not being bound to see to the application of the purchase money. The rule is the same whether the title be made by the trustee, or by his sole heir and devisee.

5. SAME—PARTIAL EXECUTION. One claiming to be a beneficiary under a trust, and having secured the benefit of the major portion of the trust property, cannot be heard in equity to demand its further execution, without disclosing what he has done with the portion secured by him, and offering to have the trust administered thereon. "He who asks equity must do equity."

6. SAME—EQUITIES EQUAL. When the equities are equal the legal title prevails; and though trusts are almost exclusively within the juris-

51

diction of courts of equity, and while equity follows the law, it will never lose sight of the rights of all the parties before it, and will not execute a trust piecemeal.

7. JURISDICTION OF COUNTY COURTS. Though the complainant alleges, in reference to only one of the blocks of land embraced in the deed, that "the land does not exceed in value one thousand dollars," yet when the bill prays the Court to deem as a trust the deed conveying six blocks of land, the express consideration of which was $8,000, and also prays for the execution of the trust to satisfy claims of plaintiffs amounting to over $3,500, it cannot be said that the jurisdiction affirmatively appears, or is sufficiently averred in the complaint.

STONE, J.    This is an action for equitable relief.    The amended bill avers, that on the 25th of December, 1876, A. C. Hunt being indebted to Tritch and the other defendants in error severally, executed a warrantee deed conveying to his brother, H. R. Hunt, certain lands, including block 7 of Hunt's addition to Denver, which deed was duly acknowledged and recorded; that said deed, "while it purported on its face to be an absolute conveyance in fee of the lands, was in fact executed and delivered by the said A. C. H. to H. R. H. in trust merely, for the purpose of paying and satisfying certain of the creditors of the said A. C. H., and especially the plaintiffs," named.

The bill further avers that the deed was made without any consideration from the said grantee, or from any other source; that said grantee held the said land in trust for said purpose, until April 1, 1878, when he died, without having in any manner executed the said trust, leaving a widow, to whom, shortly before his death he devised by will all the real estate of which he died possessed; that the fee of said block 7 appearing by record to have been in the testator at the time of his death, the widow, as sole heir and devisee, claimed the same as her own, notwithstanding she had notice of the said trust. That in September, 1877, Tritch recovered a judgment against the said A. C. Hunt for $1,026.40; that execution was issued thereon, which was, in February, 1878, returned *nulla bona;* that in November, 1878, an *alias* execution was issued and levied upon said block 7, and the levy recorded in the office of the county recorder; that on the 18th of April, 1879, the said widow, Melissa Hunt, conveyed the said block 7 to Learned, the plaintiff in error.    The bill avers that Learned received

the said conveyance "with notice of the claims of plaintiffs, and of the levy aforesaid, and with notice that the said Melissa Hunt was without lawful authority to make such conveyance, and with notice that the said block of land had been held by the said H. R. Hunt in trust for the purposes hereinbefore set forth; that the said land does not exceed in value one thousand dollars."

The complainants thereupon pray that the said deed of the property from A. C. Hunt to H. R. Hunt be declared a conveyance in trust for the purpose of satisfying the claims of the said creditors; that the deed from Melissa·Hunt to Learned be surrendered up, to be canceled and held for naught, and that the Court appoint a trustee to execute the said trust.

The answer of Learned denies the trust, and denies any notice thereof, but avers, on the contrary, that at the time he received the said deed from Melissa Hunt he had no knowledge, notice or suspicion of the trust, or that the deed from A. C. H. to H. R. H. was not in fact an absolute conveyance in fee, as the same purported to be, and that he, Learned, was a purchaser in good faith for a valuable consideration, which consideration is set out in detail to consist of fifteen hundred dollars, seven hundred of which was in cash, and eight hundred was the value of a parcel of land conveyed by him to Mrs. Hunt, which land is particularly described. The answer further avers that the deed from A. C. H. to H. R. H. conveyed altogether six blocks of land in Hunt's addition to Denver,·including block 7 in controversy.

All the evidence in the case was taken before a referee, and by deposition, and is fully set out in the record. Upon hearing, the Court rendered a decree in accordance with the prayer of the bill, that the deed from A. C. Hunt of the land in controversy to H. R. Hunt be declared a conveyance in trust for the purpose of satisfying the complainants and other creditors of A. C. Hunt. That Learned, the plaintiff in error, was a purchaser with notice of said trust; that the deed from Melissa Hunt to Learned of block 7 be declared null and void, and be surrendered for cancellation; and that a trustee be appointed to execute the trust, etc.

That, for more reasons than one, the evidence does not war-

rant this decree, is quite clear. In the original briefs filed the arguments of counsel were chiefly confined to the question of notice of the trust, with which it was alleged in the bill that Learned was charged as a purchaser, and hence, upon examination of the case at the preceding term, we requested counsel to file additional briefs upon the question of whether such a trust as the bill averred could be established by parol, which request has been complied with. Counsel for defendants in error insist that this question should not be considered by this Court, for the reason that it is not fairly presented by specific assignments based upon exceptions in the Court below; and for the further reason, that if the statute of frauds is relied upon, it should have been pleaded. As to this last objection, it is only necessary to observe, that since the bill does not disclose whether the trust was created by writing or parol, nor by what character of evidence the trust was proposed to be established, (nor, as the authorities hold, was such averment necessary,) there was no ground for demurrer to the bill upon this point, and the defendant was without the requisite knowledge to enable him to plead the statute in his answer; the fact that the alleged trust rested in parol, was first brought to the knowledge of defendant below by the plaintiffs in introducing their evidence.

As to the question of notice, when we come to investigate it, we are brought face to face with the question as to the validity of the trust, and the consideration of the latter question becomes unavoidable in the determination of the former. The evidence fails to show that Learned had either actual or constructive notice of the alleged trust. He had knowledge of the judgment of Tritch against A. C. Hunt, and of the levy upon the property in controversy, but this was no notice of the trust.

If the property had been charged with such a trust as is claimed, Tritch would have been entitled to have had the trust executed for the benefit of his claim and those of the other alleged beneficiaries of the trust, but not to appropriate the property to the satisfaction of his individual judgment, regardless of the rights of the other *cestuis que trust*, so that a knowledge of this judgment and levy was in itself very far from

leading to an inference or suspicion of the existence of such a trust.

On the contrary, a knowledge of the fact of the levy would very naturally lead to the inference that Tritch based his right of levy upon a supposition that there had been no valid conveyance of the property by A. C. Hunt, his judgment debtor, against the rights of Tritch as judgment creditor.

The witness Kellogg testified that he was the executor of the estate of H. R. Hunt; that Learned, previous to his purchase, inquired of the witness as to the title, first with reference to the settlement of the estate, and second as to the title of the widow to the property he was about to purchase; that as to the first point witness gave Learned "no information beyond the statement that the estate was not yet settled, and if this property was necessary to said settlement it would certainly be used." This information was certainly opposed to the theory of a trust upon the property. Witness further states that, replying to the second point, he asked Learned if he was aware of certain judgments standing against A. C. Hunt; that he mentioned the judgment of Tritch, and the probability that he would levy on this block 7, and that if Learned made the purchase he did so at his own risk. Witness further testified that during H. R. Hunt's last illness, about March 1, 1878, he was informed by A. C. Hunt, who, the witness testified, was his brother-in-law, that H. R. Hunt "received this property in trust for the purpose of paying certain debts of A. C. Hunt." Upon cross-examination the witness was asked if, in a conversation with Learned in the presence of Mr. Barnum, he, the witness, said anything in regard to the property in question being held in trust by H. R. Hunt for the creditors of A. C. Hunt, and in reply witness says: "I cannot say positively, but I think I explained the circumstances under which that deed was given."

The conversation referred to was one in which Learned and his attorney Barnum, pending the negotiations with Melissa Hunt for the purchase of block 7, were inquiring of Kellogg, the executor of H. R. Hunt, respecting the title to the property in view of the purchase, and both Learned and Barnum, in their testimony, deny positively that Kellogg referred to

any trust upon the property. This information derived from Kellogg, and that furnished by the public records, is all the knowledge or notice which the evidence shows Learned to have had respecting the title at the time of his purchase.

But it is contended that this information was sufficient to put Learned, as a purchaser, on inquiry, which would have led him to a knowledge of the trust; that if he had gone to Tritch and A. C. Hunt with his inquiries, he would have learned of the trust, and that this neglect of duty and avoidance of the source of information of which he was put upon inquiry, renders him chargeable with notice under the rule. Conceding that Learned was put upon inquiry, when we examine what these inquiries would have ultimately led to, we are forced to consider the character of the trust disclosed, and thus the question as to the trust itself is fairly raised by the record.

If the trust was invalid; if it could not be lawfully established; if it was void under the statute; or if it were such as that a Court could not lawfully decree its execution, then it is immaterial whether Learned had notice of such trust or not, since it would be notice of a fact which did not affect his title.

The deed from A. C. H. to H. R. H., set out in the record, purports to be an absolute conveyance in fee of six designated blocks of land in Hunt's addition to the City of Denver, for the consideration of $8,000, the receipt of which is expressed to be acknowledged in the usual form; the grant expressing in terms the conveyance of all the estate of the grantor, both legal and equitable, without any reservation or condition whatever. This deed is the only written evidence of the transaction which was offered in the case in support of the bill. There was no written evidence of any kind to manifest or prove the creation, declaration or existence of a trust respecting the property in question.

The only evidence offered in proof of the trust was the parol testimony of A. C. Hunt and the parol testimony of Walter Hunt as to an admission of the deceased in his lifetime, that "he held conveyances to several blocks in A. C. Hunt's addition—he didn't name the blocks—to liquidate sev-

eral debts against A. C. Hunt, naming those of George Tritch and Solomon, I don't remember the others." The principal testimony relating to the trust is comprised in the following answer of A. C. Hunt to a question asked respecting the purpose of the conveyance: "I made the deed for that property (block seven), and other property, to Hamilton R. Hunt, with verbal instructions, which were written down at the time by him, to pay off certain creditors of mine, the largest one of the number at the time being George Tritch; he was to make conveyances to Tritch and others of these lands if he and they could agree as to terms of settlement, or he was to sell the lots for cash, and pay Tritch and the other creditors out of the proceeds of such sale."

Upon cross-examination the witness stated: "The instructions were more in the shape of a memorandum of the parties to whom I was indebted, and whom I wished him to settle and pay;" and witness then stated that the instructions were given fifteen or twenty days after the deed was delivered. There was no execution of the trust whatever during the lifetime of H. R. Hunt, and no attempt on the part of Tritch or the other creditors to enforce the trust prior to the commencement of this suit; nor is there any evidence in the case that, prior to the suit, any of these creditors knew of the existence of such trust.

Such, then, is the character of the trust which any possible inquiries of Learned would have disclosed, for it is not to be presumed that he would have learned more upon such inquiry than was disclosed by the evidence in this case.

It is manifest from this testimony that whatever trust was intended or created in this transaction between A. C. and H. R. Hunt was an express trust. Express trusts are created by contract of parties. Implied or resulting trusts are such as arise by operation of law upon certain acts of parties. Hence, resulting trusts may be shown by parol; or, what is more correct to say is, that the necessary facts and circumstances being shown by parol, the resulting trust does not rest upon further evidence, but is an implication which the law itself attaches to the given state of facts. Express trusts being

a matter of agreement between parties, must be proved as contracts.

And when this class of contracts relates to lands, in order to prevent the uncertainty, fraud, perjury and injustice which is likely to ensue from attempting to show secret trusts by parol testimony, or that contracts were intended differently than imported by their face, the English statute of frauds and perjuries enacted that such trusts shall be manifested and proved by writing under the hand of the party to be thereby charged.

This statute has been re-enacted in substance in most of the States in our country, and our own statute, like those of some other States, goes even further in terms, and declares that, "no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." G. L., Sec. 1256.

That the trust alleged in the bill, there being no element or imputation of fraud charged in the case, cannot be established by such evidence as the decree in this case rests upon, is settled beyond controversy, and with scarcely a decision to the contrary to be found in the books. We cite a few of the many authorities in point, showing the application of the statute of frauds in such cases. Perry on Trusts, Sec. 79; Brown Stat. Frauds, Sec. 97; *Steere* v. *Steere*, 5 Johns. Ch., 11; *Wheelan* v. *Wheelan*, 3 Cow., 580; *Dean* v. *Dean*, 5 Conn., 284; *Elliott* v. *Armstrong*, 2 Blackf., 207; *Eaton* v. *Eaton*, 6 Vroom (N. J.), 290; *Bartlett* v. *Bartlett*, 14 Gray, 277; *Adams* v. *Adams*, 79 Ill., 518; *Whiting* v. *Gould*, 2 Wis., 552; *Woollen* v. *Hearn*, 2 Lead. Cas. in Equity, 920, 979.

Learned being a *bona fide* purchaser for value, without notice of prior equities, and not chargeable with neglect to acquire knowledge of an equity which could not be lawfully enforced against him, took a legal title which the Court erred in setting aside. There was no competent evidence to prove the trust, and the evidence admitted serves but to make it appar-

ent that the Court had no authority to declare or enforce a
trust in defiance of the statute. *Eaton* v. *Eaton, supra.*

There are many other reasons for reversing this decree,
which it is unnecessary to discuss at length, but we will men-
tion a few in order to show that the decree could not stand
even if the alleged trust had been legally established.

One objection embraced by the assignment is a jurisdic-
tional one. The suit was brought in the County Court, the
jurisdiction of which is limited to cases where the sum due or
value of the property in controversy does not exceed $2,000,
and we have held that it must affirmatively appear. by the
complaint that the case is within the jurisdiction of the Court.
(*Home* v. *Duff*, 5 Colo., 574). The only jurisdictional aver-
ment in the complaint in this case is where, referring to *block
seven*, it is alleged that, "the said land does not exceed in value
$1,000."

Yet the bill prays the Court to decree as a trust the deed
conveying six blocks of land, the expressed consideration of
which was $8,000; and also prays for an execution of the
trust to satisfy claims of the plaintiff which the bill states
amounted to over $3,500, so that it cannot well be said that
the jurisdiction affirmatively appeared, or was sufficiently
averred in the bill of complaint.

It also appears by the testimony of A. C. Hunt, that H. R.
Hunt, in the execution of the trust, was authorized to either ap-
portion the property by conveyance to the creditors, or sell it
and pay the *cestuis que trust*, out of the proceeds. Armed with
this authority, and possessed of the absolute legal title to the
property, he, as such trustee, could have lawfully conveyed a
good title, fully discharged of the trust, to any *bona fide* pur-
chaser; for such a purchaser of the legal title from a trustee
having power to sell and administer the proceeds, is not bound
to see to the application of the purchase money. (Story's Eq.
Jur., Sec. 977 *a*). This certainly is the rule where the trust is
for the payment of debts generally, as was the case here.
Perry on Trusts, Secs. 795, 797; Sugden on Vendors, 658.

Melissa Hunt, as sole heir and devisee, took the legal title.
(*Greenleaf* v. *Queen*, 1 Pet., 149; *Redhimer* v. *Pyron*, 1 Speers

52

Ch., 134).    And the title to Learned from Melissa was cer-
tainly as good as if made by her testator, for if charged with
the trust at all (which we are not to be understood as admit-
ting), she was charged with the same trust, and upon the same
conditions.

Another point in the case is, that while it appears in testi-
mony that after the death of H. R. Hunt, his widow, at the
instance of A. C. Hunt, conveyed by deed to Tritch all the
property included in the original deed except block seven, it
does not appear that it was not sufficient to satisfy the entire
claim of Tritch.    Here were six blocks of land, the value of
which was expressed to be $8,000, conveyed by the deed of A.
C. Hunt, upon the alleged trust, to satisfy claims amounting to
less than $3,600.    There is no execution of the trust during
the lifetime of the trustee, and after his death five-sixths of
the property is conveyed to one of the creditors alone, whose
claim at that time was but a little over $1,000; that same
creditor then asks a court of equity to decree him a propor-
tionate share of the other one-sixth, valued at $1,500, without
disclosing what he has done with the five-sixths previously
conveyed to him, and without offering to have the trust ad-
ministered thereon, and without in any way accounting for it,
and the Court renders a decree accordingly.   The maxim that
he who seeks equity must do equity, applies with apt force to
the complainant Tritch in this case.

Again, if Melissa Hunt could lawfully convey any portion
of this property to Tritch, she could also make a good title to
Learned; and if, on the other hand, the Court was warranted
in subjecting the property conveyed to Learned to the trust,
there was still greater reason for subjecting to the same use
the property conveyed to Tritch; the one being a *bona fide*
purchaser for value, besides holding the legal title, had an
equal equity with the other as judgment creditor.  (*Milmine*
v. *Burnham*, 76 Ill., 362).    Where the equities are equal, the
legal title prevails.

Trusts are peculiarly, and almost exclusively, within the
equity jurisdiction of Courts; and equity, while it follows the
law, will never lose sight of the rights of all parties in inter-
est before it; it will not administer a trust piecemeal or par-

tially, as was prayed in this case.    The evidence disclosed that five-sixths of this property had been either already applied to the purposes of the trust, or else it had been disposed of in violation of the trust, and in fraud of the other beneficiaries; and in either view it was wholly inequitable to set aside the legal title of Learned, and subject his purchase to the satisfaction of the creditors without dealing with the rest of the property, which it appears one of the creditors alone had appropriated, and without an inquiry and ascertainment by the Court of whether that might not have been sufficient for the alleged uses of the trust, without disturbing the title of Learned for that purpose.

The decree is reversed.

*I. E. Barnum* and *J. C. Stallcup*, for plaintiff in error.

*France & Rogers*, for defendants in error.