PLATTE WATER CO. v. NORTHERN COLORADO IRRIGATION CO.

1. IRRIGATION ACTS OF 1879 AND 1881, PURPOSE OF.—The irrigation acts of 1879 and 1881 provide a system of procedure for determining the priority of rights to the use of water for purposes of irrigation between owners of ditches, canals and reservoirs taking water from the same natural stream, and cannot be resorted to for the determination of claims to the use of water for purposes not fairly included in the term "irrigation."

2. IRRIGATION — MEANING OF TERM.— The term "irrigation," in the legal as well as in the common parlance of Colorado, denotes the application of water to lands for the raising of agricultural crops and other products of the soil.

3. A corporation which under its charter has the exclusive right to divert the waters of a non-navigable stream, and the exclusive privilege of using and controlling the same for mechanical, agricultural, mining and city purposes, cannot allow such right to remain in abeyance for a long series of years, and thereafter assert the same to the exclusion of those who have in the meantime acquired rights to the use of such stream by actual appropriation and use, in pursuance of the general laws of the state.

4. BONA FIDE APPROPRIATIONS PROTECTED BY ACT OF CONGRESS.—
The act of congress of July 26, 1866, recognizes and protects the
rights of all *bona fide* appropriators of water from the natural
streams of Colorado. The congressional act was a voluntary recog-
nition by congress of the pre-existing rights of those who had con-
structed canals and ditches, and diverted the water therein from
the natural streams to be used in mining and agricultural opera-
tions, and that such appropriators were entitled to protection of
appropriations according to the customs, laws and the decisions of
the courts of the localities wherein such rights were acquired.

## *Appeal from District Court of Douglas County.*

IN February, 1860, the governor and legislative assem-
bly of Kansas territory passed an act constituting certain
persons and their legal associates a body corporate and
politic, under the name of "The Capitol Hydraulic Com-
pany," with power, *inter alia,* to sue and be sued, to have
perpetual succession, etc. One section of the act was
as follows: ".Sec. 2. Said company shall have the power
and exclusive right to direct the water from the bed of
the South Platte river at any point they may select be-
tween the Platte cañon and the mouth of Cherry creek,
and also to direct the water from the bed of Cherry
creek at any point within six miles of its mouth, and to
conduct the water from both of said streams by canal or
ditch across the plains or intervening lands to the cities
of Auraria, Denver and Highland, in the county of Arap-
ahoe, territory of Kansas, and have the exclusive privi-
lege of using and controlling the same for mechanical,
agricultural, mining and city purposes."

Colorado was organized as a territory in 1861, and Arap-
ahoe county, Kansas, became Arapahoe county, Colorado.
In January, 1867, the territorial legislature of Colorado
passed an act by which the name "The Capitol Hydrau-
lic Company" was changed to "The Platte Water Com-
pany;" and providing further that the "said Platte
Water Company shall be liable, at law and in equity, on
all contracts, obligations, debts, claims or demands of

the Capitol Hydraulic Company; and the said Platte Water Company shall have the right to sue and may be sued by that name, plead and be impleaded, and generally shall have authority to do such acts as like corporations are authorized to do by law."

In 1879 and 1881 the general assembly passed certain acts, the purpose of which was to provide for the determination of all questions concerning the priority of appropriation of water between the owners of ditches, canals and reservoirs drawing water for irrigating purposes from the same natural stream, and all other questions of law and questions of right growing out of or in any way involved or connected therewith.

The proceedings under these acts are by application in writing by one or more parties interested, as owners of any ditch, canal or reservoir in any water district, praying the district court to proceed to an adjudication of such priorities. Notice is required to be given to each and all parties having an interest in any ditch, canal or reservoir in such water district to appear and file their statement of claim to priority under oath. The testimony is then taken, each party having opportunity to present proofs in behalf of such claim, as well as for or against any priority of right to water by appropriation sought to be shown by any other party, by or through such ditch, canal or reservoir, either as owner or consumer of water drawn therefrom. In adjudicating the priorities between the several ditches, canals and reservoirs the decree is required to show the priority of appropriation made by the original construction, as well as by any subsequent extension or enlargement of the same.

Appellant and appellee herein being severally parties to this proceeding under the acts aforesaid, the court found, and by a final decree entered December 31, 1883, adjudged the priorities of appellant's ditch as follows: "By construction (priority No. 1) so much water as will flow in said ditch on a grade or fall of four and one-half

feet to the mile, with width on bottom of ten feet, width
on top thirteen feet, with depth of water flow of eighteen
inches;— the appropriation of the water took effect on,
and the said priority thereof dates from, the 28th day
of November, 1860; and that there be further allowed
to flow into said ditch from said river, under and by
virtue of said appropriation of water by said first en-
largement thereof (priority No. 75), so much additional
water as will amount to forty-three cubic feet of water
per second of time;— said appropriation took effect on
and dates from November 1, 1873; and further, that
there be allowed to flow into said ditch from said river,
for the use and benefit aforesaid, under and by virtue
of said appropriation of water by second enlargement
thereof (priority No. 130), so much additional water as
will amount to eighty-five and ninety-five one-hun-
dredths cubic feet of water per second of time;— the ap-
propriation of which last-mentioned water took effect
on, and said priority thereof (No. 130) dates from, the 7th
day of March, 1882."

The priority of appellee was adjudged as follows:
"Number 111, with carrying capacity of said ditch, so
far as constructed, grade of twenty-one inches to the
mile, width on bottom forty feet, slope of banks one to
one, with a berme of six feet wide, slope of embank-
ment two to one, width on top or surface of water fifty-
eight feet, depth of water flow of eight feet, estimated
at one thousand one hundred and eighty-four cubic feet
per second of time."

Appellee's ditch being unfinished, the adjudication was
conditional, subject to the completion of the ditch by
the exercise of due diligence within a reasonable time.
Appellant, feeling itself aggrieved by these adjudications,
brings this appeal, and assigns error, in substance, as
follows: That the court erred in not adjudging appellant
entitled to the exclusive use and a prior vested right to
all of the waters of the South Platte river, through and

by its ditch or canal, necessary for all the uses of the city
of Denver, agricultural and otherwise, according to the
terms of the acts of the Kansas and Colorado legisla-
tures, respectively, and for the irrigation of lands on the
line of said ditch or canal, as the same were at the time
of the passage of said acts, or ever might be for all times
thereafter; and that, instead of adjudging that appellant
was limited therein, the court should have limited the
claims and rights of all other claimants, and especially
the said the Northern Colorado Irrigation Company and
its said canal.

Messrs. JOHN C. STALLCUP and JOHN T. SHAFFROTH,
for appellant.

Mr. HUGH BUTLER, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The irrigation acts of 1879 and 1881 were intended as
a system of procedure for determining the priority of
rights to the use of water for irrigation between the
owners of ditches, canals and reservoirs taking water
from the same natural stream.   The proceedings under
said acts are purely statutory, and cannot be resorted to
for the purpose of determining the claims of parties to
the use of water for domestic or other purposes not fairly
included within the meaning of the term "irrigation."

The word irrigation, in its primary sense, is defined
" a sprinkling, or watering; " yet, according to the best
lexicographers, it has an agricultural or special significa-
tion: " The watering of lands by drains or channels."
Worcester.   " The operation of causing water to flow
over lands for nourishing plants."   Webster.   Consider-
ing the history of Colorado, the nature of its soil and
climate, its constitutional and legislative enactments, as
well as the decisions of our courts, we have no hesitation
in saying that our legislators used the term "irrigation"

in the acts under consideration according to the common parlance of our people, — in its special sense, — as denoting the application of water to lands for the raising of agricultural crops and other products of the soil.

It is conceded by appellee that in this proceeding appellant is entitled to an adjudication of its priorities, in connection with the other claimants of water for irrigation, according to the extent of its actual appropriation; and it is not denied by appellant that the decree appealed from was rendered on this basis. But it is contended by appellant that its rights are not to be so measured and restricted; that by the terms of its charter from the territory of Kansas, confirmed by the territory of Colorado, it acquired the exclusive right to all the water of the South Platte river, and the exclusive privilege of using and controlling the same for mechanical, agricultural, mining and city purposes.

Whatever may be the rights of appellant under its respective territorial charters, it cannot in this proceeding properly claim anything except in adjudication of its priorities for purposes of irrigation. If it has rights for purposes of irrigation of a kind different and superior to such as are acquired by priority of appropriation, it must be because those rights became vested by the terms of its charter so as to be protected by the constitution of the United States against any state enactment, constitutional or legislative, impairing the obligation of such contract. This is what counsel for appellant virtually contend for on this appeal. In support of this claim counsel for appellant refer to the act of congress of July 26, 1866, and the opinion of Mr. Justice Miller in *Broder v. Water Co.* 101 U. S. 274. Said act of congress provides for the maintenance and protection of rights to the use of water which have become vested by priority of possession, and which are recognized and acknowledged by the local customs, laws and decisions of the courts. The act says nothing about rights claimed by legislative grant without

actual possession, appropriation or use; and we are not aware of any local custom, law or judicial decision of Kansas or Colorado which declares that a party may secure a grant to the exclusive use of the waters of a natural stream, allow the same to remain in abeyance for a long series of years without making use of the exclusive privilege so granted, and thereafter assert the same to the exclusion of those who have in the meantime acquired rights to the use of such waters by actual appropriation and use in pursuance of the general laws of the state.

By the constitution and laws of Colorado, state and territorial, from the earliest times, rights to the beneficial use of water from natural streams have been acquired by diversion through prior appropriation rather than by grant. It has been the settled doctrine of our courts that such appropriation, to be valid, must be manifested by the successful application of the water to the beneficial use designed, or accompanied by some open, physical demonstration of intent to take the same for such use. Const. art. 16; *Yunker v. Nichols*, 1 Colo. 551; *Schilling v. Rominger*, 4 Colo. 100; *Coffin v. Ditch Co.* 6 Colo. 442; *Thomas v. Guiraud*, id. 530; *Sieber v. Frink*, 7 Colo. 148; *Reservoir Co. v. People*, 8 Colo. 614.

In the language of Mr. Justice HELM in *Wheeler v. Irrigation Co.* 10 Colo. 582: "The diversion of the water ripens into a valid appropriation only when the water is utilized by the consumer, though the priority of such appropriation may date, proper diligence having been used, from the commencement of the canal or ditch."

In view of these authorities, it is clear that if appellant's claim to the exclusive right and privilege of diverting and controlling the waters of the South Platte river for purposes of irrigation, without the exclusive prior appropriation thereof, can be maintained, it must be by virtue of some law superior to our own. If the common law be invoked we are at once confronted by a most serious obstacle; for, under that system of jurisprudence,

the right to the use of running water of a natural stream not navigable is an incident to the ownership of the soil through which it flows. It is a part of the freehold, and passes only by grant or prescription. 3 Kent, Comm. 439; Ang. Water-courses, § 8; *Gardner v. Village of Newburgh*, 2 Johns. Ch. 162; *Davis v. Fuller*, 12 Vt. 178.

At common law the right to divert the water of a non-navigable stream might be granted, to a certain extent, by the proprietor of the soil through which the stream runs. But in the controversy under consideration such proprietor was the United States, and appellant shows no grant from such proprietor. On the contrary, the act of congress of May 30, 1854, section 24, under which the territory of Kansas was organized, in conferring legislative power upon the territory expressly provided that "no law shall be passed interfering with the primary disposal of the soil." This inhibition, therefore, unless there be some escape from the doctrine of the common law, would operate, *ipso facto*, to render ineffectual any act that such territory might pass granting to any party or parties exclusive right or privilege to the running waters of any non-navigable stream. It is scarcely necessary to add that the South Platte river is not navigable in Colorado, and that all the lands in the vicinity of Denver in 1860 were a part of the public domain of the United States. The act of 1867 by the territorial legislature of Colorado, so much relied upon by counsel, does not in terms attempt to confer upon appellant anything more than general "authority to do such acts as like corporations are authorized to do by law." We presume it will not be contended that the law referred to in this act was other or different, in respect to water rights, than as declared by this court in the cases above cited.

The opinion of the supreme court of the United States in the case of *Broder v. Water Co., supra*, correctly interpreted and applied, is a refuge to all *bona fide* appropriators of water from the natural streams of Colorado.

It seems to us decisive of this controversy. In that case the court declared, in effect, that the act of July 26, 1866, was a voluntary recognition by congress of the pre-existing rights of those who by priority of possession had constructed canals and ditches to be used in mining operations, and for the purpose of agricultural irrigation, where such artificial use of water was an absolute neces-sity; and that such persons were entitled to the protec-tion of such rights according to the customs, laws and decisions of the courts of the locality where such rights were acquired. Applying the doctrine of the *Broder Case* to the case at bar, it says, in effect, to appellant: Though your charter from the territory of Kansas was ineffectual to convey an exclusive right, or perhaps any right, to the waters of the South Platte river, according to the rule of the common law, yet according to the local customs, laws and decisions of the courts of Colorado, you are entitled to protection to the extent of your act-ual appropriation.

The case of *Feliz v. City of Los Angeles*, 58 Cal. 73, cited by counsel for appellant, is easily distinguished from the case at bar. That was an ordinary suit in equity for an injunction. The city was a party to the suit; and it was found, as a matter of fact, that the mu-nicipal authorities of said city had at all times for a hun-dred years "exercised control of and claimed the ex-clusive right to use the waters of said [Los Angeles] river, and all thereof, which right was duly recognized, acknowledged and allowed by the owners of the land at the source and bordering on said river, including the grantors" of the other party to the suit.

This case is a special statutory proceeding for a particu-lar purpose. Appellant (a private corporation), and not the city of Denver, is the party to the record. Appellant has never exercised the exclusive right to the use of the waters of the South Platte river, nor has such right ever

in any manner been recognized by appellee, or by any party having authority in the premises.

It will be observed that we indicate no opinion either as to the right of appellant as an appropriator of water for purposes other than irrigation, nor as to the rights of the city of Denver as a consumer of water for any purpose. We are of opinion that the district court of Douglas county did not err in the matters complained of by appellant, and its decision in that behalf is accordingly affirmed.

*Affirmed.*