WATERBURY ET AL. v. FISHER.

1. TRUSTS—ELECTION.

Plaintiff's assignor contributed money towards the purchase of certain real estate, and received from the defendant the following: "Received of E. J. Loper four hundred and nine and 20-100 dollars, and invested the same in lots (describing them), taking deed in my name for same. Above amount, together with one half of profits of sale of lots, to be paid said Loper at the time of sale, less expense of sale. Miers Fisher." *Held*, that the writing is an acknowledgment that plaintiff's assignor had an interest in the real estate *pro tanto ;* that plaintiff, having obtained partition of the estate, rendered the contingency upon which profits were to accrue impossible, and waived all right to insist upon a division thereof; and, further, that the clause in the memorandum, providing for a share of the profits resulting from sale of the real estate, is not a further grant of interest therein that could be decreed upon neglect or failure to sell the same.

2. PRACTICE—DEMURRER—PRAYER.

A demurrer will not lie to the whole bill on account of a specific prayer. Under our code, the form of the prayer seems to be immaterial.

3. SAME.

If the facts put in issue and established by the evidence entitled the party to any relief in the power of the court to give, although not demanded, it is the duty of the court to give it. Its power to do so is not conditioned upon the form of the prayer.

4. EXPRESS TRUSTS—EVIDENCE.

The memorandum, *supra*, is sufficient to establish a trust under the statute of frauds. It is not required by statute that a trust should be created by a writing, but that there should be evidence in writing, proving that there was such a trust. The proof may be made by letters and informal documents, and parol evidence may be admitted to apply them.

5. LIMITATIONS.

So long as property remains in common and neither party is in default, no cause of action arises between them, and the statute of limitations does not apply.

*Appeal from the District Court of Arapahoe County.*

ON THE 5th day of March, 1881, the defendant Fisher and one E. J. Loper purchased of Vincent D. Markham lots 25 to 32 (both inclusive), in block 22, in Case and Ebert's addition to the city of Denver, for $5,600. The lots were subject to an incumbrance of $1,740, which was assumed by the purchasers, deducted from the $5,600, leaving $3,860, which was paid in cash, of which amount Loper paid $409.20, and Fisher $3,450.80. The conveyance was made to Fisher. On the date of the purchase the defendant executed and delivered to Loper the following memorandum in writing :

"$409.20.          DENVER, COLO., March 5, 1881.

" Received of E. J. Loper four hundred and nine and 20-100 dollars and invested the same in lots 25, 26, 27, 28, 29, 30, 31 and 32, in block 22, in Case & Ebert's addition, taking deed in my name for same. Above amount together with one half of profits of sales of lots to be paid said Loper at the time of sale, less expense of same.          MIERS FISHER."

On the 17th day of June, 1882, Loper traded to Knight

Bros. & Waterbury his interest in the transaction for a piano, and transferred to such firm the memorandum received by him from Fisher, as above, by the following indorsement upon the back of the instrument:

"As consideration for and in payment for a piano this day sold to Meribah M. Loper by Knight Brothers & Waterbury, I hereby transfer, assign, sell, bargain and convey unto said Knight Brothers & Waterbury all my interest in the within agreement and the property therein described. The said Knight Brothers & Waterbury, however, are to pay either to me, my heirs, assigns, or legal representatives, a sum equal to one half of whatever they may receive or realize for or on account of the said agreement on the property herein described in excess of $409.20, they to use their best endeavors to realize as much as possible for or on account of the said agreement and the property therein mentioned.

"E. J. LOPER, [SEAL.]
"Denver, Colo., June 17, 1882."

At some subsequent time, not stated, Knight Brothers & Waterbury transferred the written instruments, for the alleged consideration of $800, to the plaintiffs (appellants). The land remaining unsold, and as alleged in the complaint, Fisher having refused to sell for amounts offered, plaintiffs brought this suit.

The first complaint filed was in the nature of a bill for specific performance, claiming the return of the $409.20 paid by Loper, and one half the profits, based upon the value as estimated at the time, over and above the expenses paid. A demurrer was filed and sustained. On April 20, 1891, plaintiffs filed a second or amended complaint, containing the following allegations, among others, as follows:

"Wherefore, the plaintiffs allege that the plaintiffs and the said defendant, Miers Fisher, now hold said real estate as tenants in common, the said plaintiffs being entitled to eighteen one-hundredths (18-100) thereof and the said defendant to seventy-two one-hundredths (72-100) thereof,

and said plaintiffs being also entitled to one half of the profits that may be derived from the sale of said real estate.

"The plaintiffs further allege that within a year prior to the bringing of this suit, they requested said Miers Fisher to sell the said real estate and to pay to them their interest therein, together with their share of the profits realized on the sale of said real estate, and they further allege, on information and belief, that the said real estate is now worth in the market twenty thousand ($20,000) dollars, and that the said Miers Fisher has had frequent opportunities to sell, and can now sell the said real estate for the market value thereof and derive a large profit therefrom, which should be divided between the said plaintiffs and Miers Fisher.

"That the plaintiffs desire a division of said real estate and their share of the profits thereof, but that the said defendant, Miers Fisher, now wholly unmindful of the plaintiffs' rights herein, refuses to make a division of the said real estate, and refuses to sell the same or permit the same to be sold, and refuses to comply in any manner with the terms of his contract made with the said E. J. Loper as aforesaid," and asked relief as follows: " Wherefore plaintiffs pray that the parts or shares justly belonging to the plaintiffs and the defendant, Miers Fisher, hereinabove named in and to the above described real estate may be settled and ascertained by and under the direction of this court; and that a fair division and partition thereof may be made between the plaintiffs and the defendant, Miers Fisher; and that the proper commissioners may be appointed to make the division and partition of the said premises between the said plaintiffs and the defendant, Miers Fisher; and that the plaintiffs may have paid to them such an amount as they may be entitled to as shall equal one half of the profits derived, or that may be derived from the sale of said real estate; or in case partition and division of said property cannot be made without material injury to the rights of the plaintiffs and the defendant, then a sale of said premises may be decreed and that the said property be sold under the direction of this court, and that the proceeds of

the sale may be divided between the said plaintiffs and the said defendant, Miers Fisher, according to their several rights and interests therein."

On the 9th of May, 1892, the defendant elected not to stand by his demurrer, but to make answer. Admitted the purchase of the property as stated in the complaint, but stated the consideration to have been $5,600, instead of $4,000, as alleged in the complaint. Admitted the receipt from Loper of $409.20, which was applied to the purchase, and the interest of Loper to that extent in the property. Alleged that, by the terms of the agreement between Loper and himself, Loper "was at once upon the purchase * * * to assume the management * * * should devote his best and most diligent efforts to procuring, and should procure a purchaser * * * and cause said real estate to be sold at a profit within a reasonable time, and during the spring and summer of 1881." Admitted that if such contract had been carried out by Loper he was to receive from the proceeds of such ·sale the $409.20 by him contributed, and one half of the profits of the transaction as alleged in the complaint. Alleged that Loper never assumed the management nor made an effort to sell. Admitted the making of the memorandum of March 5, 1881. Further alleged the payment by himself of the incumbrance of $1,740, and interest; also the payment of taxes at different times, amounting in the aggregate to near $1,100.

For a second defense defendant pleaded the statute of frauds; for a third, the statute of limitations of six years in money demands; fourth, the statute of limitations of five years for "bills of relief" in cases of trust not cognizable by the courts of common law.

A trial was had to the court; a decree for partition made; commissioners appointed; the property divided, setting off a certain portion to the plaintiffs; the report of the commissioners approved by the court; a final decree entered, by which the court refused to decree to the plaintiffs an order of sale of the remaining property and a division of the profits.

An appeal was taken to this court, the refusal of the court to order the sale and divide such profits as might be realized, being assigned for error.

The defendant filed cross errors, nine in number:

1st. That the court erred in refusing to strike the amended complaint from the files, because it, as alleged, stated a different cause of action from that stated in the original complaint.

2d. In overruling defendant's demurrer to the amended complaint on the ground that the facts stated did not constitute a cause of action.

3d. In finding that the plaintiffs owned an interest in fee in the property.

4th. In effect same as third, finding the parties to be tenants in common.

The 5th and 6th need not be noticed, as they only embrace, in a different form, matter contained in the others.

7th. That the court erred in decreeing a partition.

The 8th and 9th are general in regard to the finding and decree.

Messrs. DOUD & FOWLER, for appellants.

Mr. OSCAR REUTER, for appellee.

REED, J., delivered the opinion of the court.

Appellants prosecute this appeal, alleging as error the failure of the court to decree a greater or further interest in the property or proceeds. The assignment is as follows: " The court erred in not requiring the appellee to sell said real estate and to pay to the appellants a proportion of the profits derived from the sale of said real estate ; " and " the court erred in not decreeing that the appellee should account for one half of the profits on the real estate mentioned in said decree." No other errors are claimed or urged in argument. By the decision upon the demurrer to the original

complaint, it was held that the suit could not be maintained, and the relief asked—a decree of sale and an accounting—granted, and plaintiffs were required to so amend the prayer for relief as to ask for partition.  No error is assigned upon such finding.  An amended complaint was filed and relief prayed in the alternative : 1st. If practicable, partition. 2d. If found impracticable, a sale and accounting,—in effect, in the second, asking the same relief as in the original complaint, after having acquiesced in and adopted the decision on demurrer, and the relief asked further complicated by the following prayer : " And the plaintiffs further pray that in the event of a partition of said premises that that portion of said real estate set off to the defendant, Miers Fisher, may be sold, in case any property shall be sold, before the selling of that portion of said real estate that may be allotted to the plaintiffs herein."

Partition was found practicable, and the land partitioned under the decree, and although, as stated, the relief asked was in the alternative, the complaint now is that plaintiffs did not get both.  It will readily be seen that the two were incompatible.

The memorandum in writing is an acknowledgment in writing that plaintiffs' assignor had contributed $409.20 to the purchase, and had interest in the real estate pro tanto.  The second is a promise to pay one half the profits, after the sale of the entire property, from the proceeds.  No sale was made, plaintiffs elect to partition, and by obtaining partition render the contingency, upon which profits were to accrue, impossible.  The court was powerless, after partition, to order the sale of either parcel severed from the other, or both together, and without the sale of the entire property there could be no profits for division.  Having elected to take their proportionate share of the property, with its enhanced value, plaintiffs waived all right to insist upon the division of profits, which could only result from a sale which had never been made.  Counsel proceed upon the theory that the clause in the memorandum providing for a division of profits was a

further grant of some interest in the estate of appellee, that could be decreed upon the neglect or failure of appellee to sell the property. This is a mistaken view. No interest in the realty was granted or could be predicated upon it. It was simply a promise to account for and pay over a share of the proceeds after a sale had been consummated and profits realized, and as no sale had been made, no action or suit could be maintained upon the promise. There was no cause of action at law or in equity.

. Leaving out of consideration the testimony of appellee, which clearly establishes the relation and intentions of the parties, the same facts stated by him are fairly inferable from the memorandum and circumstances : 1st. That the property was bought on speculation. 2d. That the sale and resulting profits were to result from the services of Loper, who was a broker or operator in real estate.

The fact that Loper contributed only one eleventh of the purchase, and in case of sale was to receive one half of the profits, is conclusive of the fact that the expected profits were to compensate him for services in selling. If such were not the fact, he and his assignees were, by their joint ownership, under equal obligation with appellee to effect a sale. Within a month or two Loper traded his interest for a piano, and ceased all efforts and connection with it. For about nine years the plaintiffs and their assignors were the owners of the Loper interest; made no effort to sell, and left appellee to protect their title and property, which he did by paying all the taxes for the entire time.

During the entire period the property was owned in common, it is not claimed or shown that any *bona fide* offer of purchase was made or that the property could have been sold at a profit. It is true, G. W. Bailey testified that about the middle of May, 1890, L. W. Waterbury (father of plaintiff) called upon him and wished him to see appellee and ascertain what he would take for the property, saying he was willing to pay $15,000. On cross-examination in regard to the supposed offer, it was modified by saying: " I thought

that (the offer) was implied in it," but he was not authorized to enter into any contract for the purchase. This, on its face, looks more like a scheme to establish a basis for damages than a *bona fide* offer to purchase. Considering the circumstances and conduct of appellants, it would seem that they got by the decree and partition all they were equitably entitled to. Whether this be so or not, they got all they could legally get on the complaint, other pleadings and evidence, and the court did not err in refusing profits.

Cross errors were filed by appellee. We cannot adopt the contention of counsel that the amended complaint stated a new and different cause of action from the original. The cause of action stated in both, as conceded by the pleadings, was the same, growing out of the same transaction, and witnessed by the same memorandum in writing, the bill upon its face and in its allegations showing the plaintiffs to have a limited interest in the property. The trouble arose from the nature of the relief asked. In the first it was asked that the defendant, Fisher, be decreed to sell the entire property, and out of the proceeds pay plaintiffs $409.20, and one half of the profits realized upon the transaction over and above expenses ; the bill as filed and the relief asked making it in the nature of a suit for the specific performance of a contract. To this complaint a general demurrer was filed " that said complaint does not state facts sufficient to constitute a cause of action." The demurrer was sustained and leave given to file an amended complaint, " so as to justify a decree of partition herein."

The amended complaint was filed, containing the same facts as the cause of action, but asking different relief, a decree for partition of the real property, etc. To this the same general demurrer was filed and overruled, showing that the demurrer was sustained, not to the cause of action as stated, but to the relief asked, holding, in effect, upon a general demurrer, that plaintiffs were not entitled to the relief asked, but by their bill had shown themselves entitled to

other relief, viz., a partition.   There was at the close the *general prayer* for relief.

Even under the old formal chancery practice, where the party did not show himself entitled to the. specific relief prayed, the general prayer for relief was frequently sufficient to warrant the court in decreeing such relief as the party had shown · himself entitled to, disregarding the prayer for special relief.   1 Dan. Ch., 382 and 383; Mitf. Eq. Pl., by Jeremy, 38 and 45; Cooper Eq. Pl., 13, 14; *Hartley v. Rus-sell*, 2 Simons & Stu. 258.

That a demurrer will not lie to the whole bill on account of the specific prayer, see *Whitbeck v. Edgar*, 2 Barb. Ch. Rep. 106.   Under our present code, the form of the prayer seems to be immaterial.   See secs. 54 and 150, Civil Code; *Kayser v. Maugham*, 8 Colo. 232.

In Bliss on Code Pleadings, sec. 161, it is said : " If the facts put in issue and established by the evidence entitle the party to any relief in the power of the court to give, although not that demanded, it is the duty of the court to give it, and its power to do so is not conditioned on the form of the prayer."

The cause of action remained the same in both cases. Consequently the amended complaint was not open to the charge of stating a new cause of action.   Nor do we think the court erred in overruling the general demurrer to the amended complaint.   The facts as stated showed a right to relief, in some way, for the amount of money invested in the property by Loper, and acknowledged by the defendant's written memorandum.   Nor can we adopt the contention of counsel that no recovery could be had by reason of the statute of frauds.   It is a matter of no importance whether the parties were tenants in common of the property · or partners handling the property for speculative purposes.   The memorandum executed by the party to be charged describes the property, admits the receipt of the money as part of the purchase price, declares the trust and the taking of the title.   It is true it does not state the cost of the property, nor the pro-

portion the amount paid bore to the whole purchase price, but it did state the amount for which he was chargeable. The memorandum made the transaction an·express trust. Without the memorandum the law would have made it a resulting trust, that could have been established by parol. See *Knox v. McFarran*, 4 Colo. 597; *Learned v. Tritch*, 6 Colo. 440; *Lipscomb v. Nichols*, 6 Colo. 292; *Kayser v. Maugham*, 8 Colo. 238; *Meagher v. Reed*, 14 Colo. 335.

We think the memorandum sufficient to establish the trust under the statute of frauds, and that the party seeking to enforce it, with the written memorandum, should not, by reason of the statute, be placed in a worse position than if there had been no written acknowledgment.

The object of the statute was to prevent frauds, not to allow a party to perpetrate them, shielded by the statute. See Wood on Stat. of Frauds, sec. 445; *Haigh v. Kaye*, L. R. 7 Ch. 469; *Lincoln v. Wright*, 4 De G. & J. 16; *Davies v. Otty*, 35 Beav. 208.

As was clearly said by Lord Alvanley in *Denton v. Davies*, 18 Ves. 503: "It is not required by statute that a trust should be created by a writing * * * but that there should be evidence in writing proving that there was such a trust." Wood on Stat. of Frauds, sec. 447; *Smith v. Matthews*, 3 De G. F. & J. 151.

Proof of the trust may be made by letters and informal documents, and parol evidence admitted to apply them. *Forster v. Hale*, 3 Ves. 707; *Smith v. Matthews, supra.*

Certainly, under the authorities, the writing was sufficient to establish the existence of the trust.

The statutes of limitations pleaded cannot avail. As long as the property remained in common, and neither party was in default, no cause of action arose. As to the other branch, the division of the profits arising, there could be no cause of action until a sale and refusal to account. Nothing in the proof established a cause of action at an earlier date than a year before action brought.

The decree having been only for the admitted share *pro*

*tanto,* and there having been no default claimed or established, it is hard to see by what equitable right appellee seeks to retain it without compensation. We think substantial justice was done to both parties, and that the decree should not be disturbed.

*Affirmed.*